IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| B.B., Individually and as Guardian Ad Litem of J.B., and J.B., | ) Civ. No. 05-00816 ACK-KSC ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| STATE OF HAWAII, DEPARTMENT OF EDUCATION, | ) ) ) |
| Defendant. | ) ) |
| _____ | ) |

ORDER AFFIRMING THE HEARING OFFICER'S ADMINISTRATIVE DECISION

BACKGROUND

I.   Procedural Background

B.B. ("Mother"), individually and as guardian ad litem of J.B., and J.B. ("Student") (collectively "Plaintiffs"), have sued the State of Hawaii, Department of Education (hereafter "DOE" or "Defendant"), for allegedly denying Student the free and appropriate public education ("FAPE") to which he is entitled. Plaintiffs assert that Student is entitled to a FAPE pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1487 (2005).

The IDEA was enacted by Congress to, among other things, "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to

1

meet their unique needs . . . [and] to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A)-(B) (2005).  The IDEA provides federal money to state and local education agencies to assist them in educating disabled children, on the condition that the state and local agencies implement the substantive and procedural requirements of the IDEA.  <u>See</u> <u>Robb v. Bethel School District #403</u>, 308 F.3d 1047, 1049 (9th Cir. 2002).  The IDEA provides procedural safeguards to permit parental involvement in all matters concerning the child's educational program, including an opportunity for an impartial due process hearing with respect to complaints, and allows parents to obtain administrative and judicial review of decisions they deem unsatisfactory or inappropriate.  <u>Id.</u>

On June 30, 2005, Plaintiffs commenced the complaint process, for the second time, by requesting an administrative hearing with the Department of Education, pursuant to the IDEA. The hearing occurred over two days, September 16, 2005 and September 22, 2005.  The parties submitted their closing briefs in writing on October 28, 2005.  The administrative proceedings culminated with the Hearing Officer's issuance of Findings of Fact, Conclusions of Law and Decision on November 30, 2005 ("Administrative Decision").

Dissatisfied with the conclusions of the Hearing

Officer, Plaintiffs filed suit in this Court pursuant to 20
U.S.C. § 1415(i)(2)(A) on December 29, 2005. Defendant filed its
Answer to Plaintiffs' Complaint on January 27, 2006.

The Court received the Administrative Record on Appeal
on March 2, 2006.  The complete record is comprised of the
following five components: (1) Administrative Record on Appeal
("Hearing Record"); (2) Plaintiffs' Exhibits 1-21; (3)
Defendant's Exhibits 1-21; (4) Transcript of Administrative
Hearing Volume 1 from September 16, 2005 ("Transcript Vol. 1");
and (5) Transcript of Administrative Hearing Volume 2 from
September 22, 2005 ("Transcript Vol. 2").

Plaintiffs filed their Opening Brief in Support of
Reversal of Administrative Hearing Decision ("Opening Brief") on
July 31, 2006.  Defendant filed an Answering Brief Opposing
Reversal of Administrative Hearing Decision ("Opposition") on
August 31, 2006.  On September 15, 2006, Plaintiffs filed a Reply
Brief in Response to Defendant's Answering Brief Opposing
Reversal of Administrative Hearing Decision ("Reply").  The Court
held oral arguments on the appeal on October 2, 2006, and
continued the hearing to October 11, 2006.

Prior to the continued hearing date, Plaintiffs and
Defendant each filed a memorandum updating the Court as to the
current status of Student's IEP pursuant to the Court's request.
The parties then appeared before the Court for the conclusion of

3

the hearing on October 11, 2006.

## II.  **Factual Background**

The subject of this appeal is the second Administrative Decision issued by the Office of Administrative Hearings regarding Student's education.  At the time the Administrative Decision was issued, Student was 11 years old (DOB: 03/03/94) and had been attending the private school, Loveland Academy ("Current Placement"), since 2001.

As a result of a premature birth, Student suffers from Periventricular Leukomalacia, which can generally lead to perceptual, cognitive, behavioral, and psychological challenges.  Plaintiffs' Exhibit 5 at 1.  Specifically, and most pertinent to this appeal, Student has a history of grand mal seizure disorder, bronchio-pulmonary difficulties, progressive hearing loss, chronic ear infections, asthma, behavior disorders, and Attention Deficit Hyperactivity Disorder.  Id.  There is no dispute that Student is eligible for special education services under the IDEA.  See Administrative Decision at 3.

Mother made her first Request for Impartial Hearing in September 2003, when the DOE notified her by Prior Written Notice that it would not fund Student's private school placement at Loveland Academy because it asserted that it could offer Student a FAPE at Jefferson Elementary ("Home School").  After a December 2003 hearing, Hearing Officer Richard Young concluded that

4

Defendant had failed to provide a FAPE to Student, the IEP was
inappropriate, and that the Current Placement was appropriate.
Reply, Ex. 1 (February 5, 2004 Administrative Decision) at 9.
The DOE was ordered to reimburse Plaintiffs for all unpaid
education costs and pay for Student to remain at the Current
Placement through the end of the 2003-04 school year.

On May 28, 2004, an Individualized Education Program
("IEP") meeting was convened to address Student's needs for the
2004-05 academic year.  Defendant's Exhibit 2 at JB 2.  The
following individuals were present at the May 2004 IEP meeting:

1)  Pearlene Blaisdell - Home School Vice Principal;
2)  John Flynn - HOD Administrator;
3)  Carolyn Chang - Home School Special Education
    Teacher;
4)  Cora Hiranaka - Occupational Therapist;
5)  Judy Nomura - Speech Pathologist;
6)  Nicole Rowles - Current Placement Communication
    Aide;
7)  Kevin Nabalta - Current Placement Teacher;
8)  Cassandra Denton - Current Placement Occupational
    Therapist; and
9)  Mother.

Defendant's Exhibit 2 at JB 19.  The team developed and completed
the IEP ("May 2004 IEP"), which was to be implemented by the
staff at the Current Placement.  Transcript Vol. 2 (Testimony of
Dr. Patricia Dukes, Director of Current Placement) at 372:8-10.
Pursuant to the findings in the February 2004 Administrative
Decision, the DOE recognized that it was not yet prepared to
offer a FAPE to Student.  Therefore, Student remained at the
Current Placement for the 2004-05 school year and the DOE funded

his education.

On May 24, 2005, as the 2004-05 school year neared its conclusion, the IEP team reconvened to address Student's IEP and placement.  Defendant's Exhibit 3.  Again, members from the Home School and Current Placement, along with Mother, met for the purpose of identifying the needs and goals for Student in the following year.  The individuals present included:

1) Vivian Hee - Home School Principal;
2) Kristen Williams - Home School Special Education Teacher;
3) Cora Hiranaka - Occupational Therapist;
4) Judy Nomura - Speech Pathologist;
5) Bruce Watson - Speech Pathologist;
6) Nick Abel - Counselor;
7) Michelle Ito - Regular Education Teacher;
8) Sandra Matsui - SSC;
9) Marsha Ho - Current Placement Occupational Therapist;
10) Iwalani Campbell - Current Placement Head Special Education Teacher; and
11) Mother.

Defendant's Exhibit 4 at JB 41.  Significantly, the Home School Principal, Vivian Hee, offered to implement the newly developed IEP at the Home School for the 2005-06 academic year.  Id.  The new IEP ("May 2005 IEP") also contained a transition plan to assist in Student's move from the Current Placement to the Home School.  Id.  Mother declined the FAPE offer.  Id.  Dissatisfied with Defendant's offer of a FAPE in the public school system and with the transition plan, Mother filed a second Request for Impartial Hearing on June 30, 2005.

III. **<u>The Administrative Decision</u>**

After two days of hearings, Hearing Officer Craig Uyehara ("Hearing Officer") made detailed findings of fact, reached conclusions of law, and ultimately ruled that Defendant proved by the preponderance of the evidence that it provided a FAPE to Student pursuant to the May 2005 IEP. Administrative Decision at 14. Accordingly, the Hearing Officer dismissed Plaintiffs' due process hearing request.

As stated, the parties agree and the Hearing Officer found that Student is eligible for special education services under the IDEA. Administrative Decision at 3. The contested issue is whether Defendant offered a FAPE to Student through the May 2005 IEP, which provided for Student to be transferred to the Home School for the 2005-06 year.

The Hearing Officer identified many accommodations and special services that were provided for Student in the May 2005 IEP. The IEP offered Student 180 minutes per week of counseling, 60 minutes per week of occupational therapy, 1050 minutes per week of special education, and 60 minutes per week of speech/language therapy. Administrative Decision at 3. The IEP also provided Student with an extended school day of 600 minutes per week for therapeutic recreation and an extended school year "for breaks over 10 school days for academics, speech, occupational therapy, and counseling." <u>Id.</u> The May 2005 IEP

7

also emphasized that Student be housed in an air conditioned classroom and have his hearing aid checked every day.  Id. Student would be instructed in a regular education classroom at all times that he was not receiving special education services.

The program also outlined a transition plan that provided for a counselor to serve as Student's point of contact, a friendship group, and classroom visits to ease Student's move to the Home School.  Administrative Decision at 4.  The IEP contained Present Levels of Performance ("PLEPS"), which identified Student's medical condition, his current achievement levels, and his needs.  Id.  The IEP team developed annual goals and objectives in the areas of Career and Life Skills, Language Arts, Mathematics, Oral Communication, and Physical Education. Id.

The Hearing Officer found that the IEP team, including Mother, agreed to the information contained in the PLEPS, goals, and services.  Administrative Decision at 4.  Finally, the Hearing Officer found that the IEP was to be implemented in the Home School, but that Principal Hee stressed that other placements may be considered if the Home School proved inadequate.  Id.

The findings of fact, outlined above, formed the basis for the Hearing Officer's conclusions of law.  First, the Hearing Officer concluded that the "PLEPS establish a sufficient baseline

8

for the development" of an appropriate education program for Student. <u>Id.</u> at 13-14. He explained that the PLEPS were developed by the IEP team after reviewing Student's previous PLEPS, classroom observations, and Student's work product. <u>Id.</u> at 5-6. The Hearing Officer also concluded that the Home School would be offering the same level of special education services provided by the Current Placement. <u>Id.</u> at 8. In sum, the Hearing Officer held that the "credible evidence" supported the conclusion that those in attendance at the May 2005 IEP meeting agreed with the PLEPS, goals, and services. <u>Id.</u> at 11.

The Hearing Officer also found that Student would receive the same extended school day services, 600 minutes a week, that the Current Placement provided pursuant to the May 2004 IEP. <u>Id.</u> at 11. Addressing Mother's concerns about class size, the Hearing Officer noted that Student would be in a small setting with 5 other students for his special education classes, and then join a class of approximately 20 students for the remainder of his classes. Administrative Decision at 13. While the regular education class was significantly larger than Student's typical setting, a part-time teacher would be hired and assigned to work with Student and others. Student's classroom would also be situated on the ground floor near the main office. <u>Id.</u> The Hearing Officer held that the IEP team sufficiently addressed the positive impact a regular education classroom

9

setting would have on Student.  <u>Id.</u> at 12.

         The Administrative Decision also addresses the IEP
team's creation of a transition plan.  First, the Home School
would assign a counselor to serve as Student's contact person and
familiar face when he transitioned from the Current Placement.
<u>Id.</u> at 13.  Next, the Home School was to provide opportunities
for both Student and Mother to visit the new school prior to the
beginning of the 2005-06 school year.  <u>Id.</u>  The Home School also
pledged to create a friendship group with other students,
allowing Student to develop meaningful bonds with his new peer
group.  <u>Id.</u>

         Finally, the Hearing Officer addressed Plaintiffs'
contention that Defendant failed to comply with the procedural
requirements of the IDEA.  Specifically, Mother asserts that she
was denied meaningful participation and input in the IEP meeting.
However, the Hearing Officer concluded that the evidence
supported a finding that Mother had ample opportunity to
participate in the IEP meeting.  <u>Id.</u> at 12.

         As stated, for all of the above reasons, the Hearing
Officer issued an Administrative Decision in which he concluded
that Defendant proved by the preponderance of the evidence that
it provided a FAPE to Student pursuant to the May 2005 IEP.
Accordingly, the Hearing Officer dismissed Plaintiffs' due
process hearing request.

**STANDARD**

In evaluating an appeal of an administrative decision under the IDEA, the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).

This statutory requirement "that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." See Board of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley, 458 U.S. 176, 206 (1982). Rather, "due weight" must be given to the findings in the administrative proceedings. Id.

The amount of deference given to an administrative hearing officer's findings is a matter of discretion for the court. See Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995) (quoting Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987)). The court must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue, but the court is free to accept or reject the findings in part or in whole. See Capistrano, 59 F.3d at 891. When exercising its

discretion to determine what weight to give the hearing officer's findings, the court may examine the thoroughness of those findings and accord greater deference when the findings are "thorough and careful."  Id.; Union Sch. Dist. v. Smith, 15 F.3d 1519, 1524 (9th Cir. 1994).

A court's inquiry in reviewing administrative decisions under the IDEA is twofold.  "First, has the State complied with the procedures set forth in the Act?  And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?  If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more."  Rowley, 458 U.S. at 206-207 (internal footnotes omitted); see also Smith, 15 F.3d at 1524.

## DISCUSSION

Plaintiffs challenge the findings and conclusions in the Administrative Decision on both procedural and substantive grounds.  Based on their assertions, Plaintiffs seek a reversal of the Administrative Decision and a finding that the Current Placement is the appropriate placement for Student.  As such, Plaintiffs seek continued reimbursement for the costs of Student's education services at the Current Placement.

Plaintiffs assert that Defendant had the burden to prove that it provided a FAPE in compliance with the IDEA.  Reply

12

at 4.  The Hearing Officer applied this standard in his decision.

Administrative Decision at 5.  At the time of the hearing and

through the submission of the closing briefs, the rule in the

Ninth Circuit was that the school district had the burden of

proving it complied with the IDEA at the administrative hearing

and the party challenging the administrative decision has the

burden at the district court.  Seattle School Dist., No. 1 v.

B.S., 82 F.3d 1493, 1498 (9th Cir. 1996) (citing Clyde K. v.

Puyallup Sch. Dist., 35 F.3d 1396, 1398-99 (9th Cir. 1994)

(superceded by statute on other grounds)).  However, the law

changed in the interim between the parties' presentation of their

arguments and when the Hearing Officer issued the Administrative

Decision on November 30, 2005.  On November 14, 2005, the Supreme

Court held that the burden of persuasion at the administrative

hearing is on the party seeking relief, which in this case would

be Plaintiffs.  Schaffer v. Weast, 126 S. Ct. 528, 537 (2005).

The Schaffer decision does not impact the rule governing the

burden at the district court level.

Generally, the reformulation of a federal civil law

will be applied retroactively.  Reed v. Hoy, 909 F.2d 324, 327

(9th Cir. 1989) (citing Austin v. City of Bisbee, 855 F.2d 1429,

1432 (9th Cir. 1988)).  "In certain cases, however, retroactive

application of the new case law will produce inequitable results;

and the new rules will be applied prospectively only."  Reed, 909

F.2d at 327.  Courts consider the following factors set forth by the Supreme Court when determining whether it is appropriate to apply a decision prospectively:

> whether the decision (1) establish[es] a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed;
> (2) state[s] a rule whose retrospective operation will retard more than further its operation, considering the rule's prior history and its purpose and effect;
> (3) [is] a decision whose retroactive application could produce substantial inequitable results, and for which a holding of nonretroactivity would avoid injustice or hardship.

Austin, 855 F.2d at 1432-33 (citing Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07, 92 S. Ct. 349, 355-56, 30 L. Ed. 2d 296 (1971)).

The Court concludes that Schaffer overrules a clear precedent on which the litigants relied by shifting the burden of persuasion from Defendant to Plaintiffs.  The parties prepared and presented their respective cases with the understanding that the burden lay on Defendant to prove that it complied with the requirements of the IDEA.  Accordingly, the Hearing Officer applied that burden.  To apply the Schaffer rule retroactively would shift the burden after the parties completed their cases and would be unjust and arbitrary.

For these reasons, the Court finds, and neither party disputes, that the Hearing Officer applied the proper burden of proof in this case.  Now, Plaintiffs have the burden of proving that the Hearing Officer erred in finding that Defendant proved

14

by the preponderance of the evidence that it complied with the IDEA and provided a FAPE to Student.  The Court now turns to Plaintiffs' challenges to the Administrative Decision.

## I.   Procedural Challenge Pursuant to the IDEA

According to the Supreme Court, Congress placed equal emphasis on the importance of complying with the procedural and substantive requirements of the IDEA.  Rowley, 458 U.S. at 205. While not every procedural flaw signifies a denial of a FAPE, procedural inadequacies that cause a student to lose an educational opportunity or create an interference in the parents' opportunity to participate in formulating an IEP, result in the denial of a FAPE.  W.G. v. Board of Trustees of Target Range Sch. Dist., 960 F.2d 1479, 1484 (9th Cir. 1992).  Plaintiffs specifically assert that Defendant erred by pre-determining the Student's IEP.

## A.   Parent Involvement

In 1975 Congress enacted the Education for All Handicapped Children Act, Pub. L. No. 94-142, 89 Stat. 775 (1975)(codified with subsequent amendments at 20 U.S.C. §§ 1401-1485 ("EAHCA").  In 1990, the EAHCA was amended to change the title of the act to the IDEA.  20 U.S.C. §§ 1400-1487.  Although a number of amendments have been made to the IDEA, many of the substantive goals of the EAHCA remain in today's IDEA.

The IDEA requires that "the parents of each child are

15

members of any group that makes decisions on the educational placement of their child." 34 C.F.R. § 300.501(c). Specifically, the Act requires that the parents of the child with a disability be a part of the IEP team. 20 U.S.C. § 1414(d)(1)(B). Previously, the Supreme Court recognized that parental involvement was an important element of the former EAHCA. Burlington Sch. Comm. v. DOE, 471 U.S. 359, 368 (1985). The Supreme Court noted that in developing an IEP consensus would likely not always be reached between school officials and parents. Id. When a consensus is not reached, the Ninth Circuit has declared that "the [DOE] has the duty to formulate the [IEP] to the best of its ability in accordance with information developed at the prior IEP meetings, but must afford the parents a due process hearing in regard to that plan." DOE v. Maher, 793 F.2d 1470, 1490 (9th Cir. 1986).

The IDEA does not explicitly vest within parents a power to veto any proposal or determination made by the school district or IEP team regarding a change in the student's placement. Id. at 1489. Rather, the IDEA requires that parents be afforded an opportunity to participate in the IEP process and requires the IEP team to consider parental suggestions. See e.g., McGovern v. Howard County Pub. Sch., No. AMD 01-527, 2001

U.S. Dist. LEXIS 13910 at *55-56 (D. Md. Sept. 6, 2001).[1]  The
McGovern court held that when a parent's suggestions pertaining
to a child's placement are not accepted and incorporated into the
IEP that does not necessarily constitute an IDEA violation.  Id.
The court further concluded that the parents were not denied
significant input in their child's IEP when there was frequent
contact between parents and school staff, the parents actively
participated in IEP meetings, and the parents' suggestions were
taken seriously by the IEP team but were not implemented in the
final IEP.  Id. at 56.

Here, the Court agrees with the Hearing Officer's
conclusion that Mother meaningfully participated in the IEP
meeting and provided input.  Administrative Decision at 12.
Mother testified that she was present at the May 24, 2005 IEP
meeting.  Transcript Vol. 2 at 295:25-296:2.  Mother testified
further that she provided information regarding Student's medical
condition, letters from his doctors, and results from educational
diagnostic tests to the IEP team.  Id. at 296:3-298:16.  Mother
stated that she was allowed to provide her input about Student's
goals, but that the IEP had already been drafted prior to the
meeting.  Id. at 298:17-299:6.  Home School Special Education
Teacher Kristen Bridges explained that she prepared a draft of

---

[1] The Court finds this unpublished decision to be
illustrative, although it is not relying on it as precedent.

17

the new IEP for the May 2005 meeting, but the PLEPS and goals were discussed, modified, and ultimately agreed upon by the entire IEP team, including Mother.  Transcript Vol. 1 at 13:11-16:21.

In addition, Bruce Watson, a DOE Speech Pathologist, testified that the IEP team discussed the PLEPS, goals, and objectives for Student.  Transcript Vol. 1 at 78:9-11.  He stated that Mother had the opportunity to provide input during the discussion.  Id. at 78:12-16.  He also recalled that Mother presented Student's medical condition, including neurological and premature birth-related issues, to the team.  Id. at 85:20-86:6.

Based on the available evidence, the Court finds that Plaintiffs have not proven that the Hearing Officer erred in finding that Mother was a member of the IEP team, who had ample opportunity to meaningfully participate in IEP development process, despite the fact that she ultimately did not agree with the implementation of the IEP at a DOE location.  The Court now addresses Plaintiffs' second basis for arguing that the IEP was pre-determined.

**B.    Plan to Hire a Part-Time Teacher**

It is unlawful to predetermine an IEP for a student without the input and participation of the student's guardian and/or teacher.  Target Range, 960 F.2d at 1484.  Plaintiffs contend that the DOE predetermined Student's IEP prior to the May

18

2005 IEP meeting.  Where a school district fails to conduct a

"meaningful [IEP] meeting with appropriate parties" the

procedural requirements of the IDEA are violated and no offer of

a FAPE is made.  <u>Id.</u> at 1485.  However, the Ninth Circuit held

that no procedural violations occurred when a school district

considered assessments by qualified individuals, observation,

records, and input from parents in developing a student's IEP,

even if it did not consider all the information from people

knowledgeable about the student.  <u>Park v. Anaheim Union High Sch.</u>

<u>Dist.</u>, 444 F.3d 1149, 1155 (9th Cir. 2006).

        Plaintiffs argue that Principal Hee's testimony that

she intended to hire a part-time teacher for Student's regular

education class is evidence that the IEP was pre-determined.

Opening Brief at 26.  Principal Hee testified, "what we were also

willing to offer was to have another part-time teacher come into

the classroom."  Transcript Vol. 1 at 54:8-9.  As Defendant

argues, it is unclear to the Court how the offer to hire a staff

member in the future indicates that Student's IEP was pre-

determined.  An IEP is designed to outline the services that will

be provided to a Student from that point forward.  Principal

Hee's testimony is consistent with that purpose, and does not

indicate that a final hiring decision had been made prior to the

May 24, 2005 IEP meeting.

        Furthermore, while Mother claims that she did not have

the opportunity to preview the IEP before the May 2005 meeting, the IEP was based in substantial part on the May 2004 IEP which she collaborated on and approved.  Then, as Bridges testified and the Hearing Officer found to be credible, the members of the IEP team discussed the new proposed version, made modifications, and approved the PLEPS, goals, and services.

Members of the Current Placement, Home School, and Mother created a satisfactory IEP in May 2004 for the 2004-05 academic year.  The following May, all interested parties reconvened to develop another successful program for Student. While the IEP developers and parties to this appeal may not have reached a complete consensus on the elements of Student's IEP and transition plan, the evidence supports the Hearing Officer's conclusions that the DOE properly considered a wide array of opinions and supporting data to develop the May 2005 IEP.  The evidence is insufficient to prove that the IEP was pre-determined.  Thus, the Court finds that there are no procedural defects in the DOE's development of Student's May 2005 IEP.  The Court will now consider the alleged substantive defects in the DOE's offer of a FAPE to Student.

## II.  <u>Substantive Challenges Pursuant to the IDEA</u>

The IDEA requires that individuals with disabilities be offered a FAPE that emphasizes special education, is designed to meet the unique needs of the student, and will prepare the

student for further education, independent living and employment.
20 U.S.C. § 1400(d)(1).  An education is appropriate if it "(1)
addresses [the student's] unique needs; (2) provides adequate
support services so [the student] can take advantage of the
educational opportunities; and (3) is in accord with the
individualized education program." Capistrano, 59 F.3d at 884,
893; see also Rowley, 458 U.S. at 188-89.  An appropriate
education "does not mean the absolutely best or 'potential-
maximizing' education for the individual child." Gregory K., 811
F.2d at 1314.  Rather, the state must only provide "a basic floor
of opportunity" for the student.  Id.  Furthermore, although a
family's preferred schooling may be more beneficial for the
student than the DOE's proposed placement, this alone does not
make the DOE's placement inappropriate.  Gregory K., 811 F.2d at
1314.

          Plaintiffs allege that the May 2005 IEP that Defendant
sought to implement at the Home School for the 2005-06 school
year was substantively deficient in the following four ways: (1)
it contained inappropriate PLEPS and goals for Student; (2) it
provided an unsatisfactory classroom setting; (3) it failed to
detail an appropriate after-school program; and (4) it lacked an
adequate transition plan.

## A.    Present Levels of Performance (PLEPS) and Goals

Plaintiffs contend that Defendant misidentified Student's current PLEPS and consequently developed inappropriate goals.  Plaintiffs argue that the PLEPS and goals were based on insufficient observations and limited diagnostic testing. Instead, Plaintiffs assert that the Court should rely on the opinions of their witnesses from the Current Placement, as they are eminently qualified to provide comprehensive diagnoses regarding Student's current achievement levels and appropriate goals.

In short, the Hearing Officer weighed the testimony and evidence submitted at the hearing and concluded that the "credible evidence established that at the conclusion of the meeting, the team, including Student's Mother and the two representatives from the Student's Current Placement, agreed with the PLEPS as well as the goals and services."  Administrative Decision at 11.  Of primary significance to the subject is the testimony of Kristen Bridges.  Bridges was the Home School teacher who took primary responsibility for developing the draft of the May 2005 IEP.  Bridges testified that she observed Student at the Current Placement twice during the 2004-05 school year in addition to conducting a reading comprehension assessment in May 2005.  Transcript Vol. 1 at 9:11-20; 30:22-24.  She then testified that she utilized the May 2004 IEP, quarterly progress

reports from the Current Placement, Hawaii Learning Standards, and input from Student's current teacher, Kevin Nabalta, and other school personnel to adapt the PLEPS and objectives for the new IEP.  Id. at 12:19-13:3.  Importantly, Dr. Patricia Dukes, Speech Pathologist and Director of the Current Placement, testified that her staff worked collaboratively with the DOE and implemented the May 2004 IEP as they considered it to be "good." Transcript Vol. 2 at 370:21-373:1.  Bridges also explained that Speech Pathologist Bruce Watson drafted the communication goals, and Occupational Therapist Cora Hiranaka drafted the physical education goals.  Transcript Vol. 1 at 14:19-25.  Both specialists observed Student in his current setting prior to providing their respective expertise in aiding with the development of the IEP.

Bridges then testified that these PLEPS and goals were presented to the IEP team, which included Mother and two members of the Current Placement staff, Marsha Ho and Iwalani Campbell. Id. at 11:13-16:21.  According to Bridges' recount of the meeting, the PLEPS and goals were discussed, modified, and "the entire team reached a consensus, agreeing to all the goals and objectives that were listed on the IEP."  Id. at 13:11-16:21.

Plaintiffs argue that the DOE's procedures were inadequate and produced a deficient IEP.  First, Mother testified that she was not satisfied with the PLEPS and goals presented in

23

the May 2005 IEP.  Transcript Vol. 2 at 299:12-17.  However, there is no evidence to support her claim, as the two members of the Current Placement staff that represented the school at the IEP meeting did not testify in the Administrative Hearing, nor have they presented affidavits or declarations.  Instead, Plaintiffs offered the testimony of numerous other Current Placement staff to criticize the PLEPS and goals; namely Kevin Nabalta, Student's Special Education Teacher, Cassandra Denton, Occupational Therapist, Lynette Shepard, Speech Therapist, Dr. Margaret Koven, Clinical Psychologist, and Dr. Patricia Dukes. Generally, the Current Placement personnel testified that many of the PLEPS and goals were either already mastered or unattainable for Student.  However, this testimony does not contradict the Hearing Officer's critical underlying finding, that all parties present at the May 2005 IEP meeting agreed to the PLEPS and goals that were developed.  Furthermore, Bridges expressed concerns about the Current Placement, as it was her opinion that Student "mastered almost none of his goals" from his IEP at the Current Placement.  Transcript Vol. 1 at 19:5-13.

Beyond the purely academic matters, Dr. Koven testified that there was a glaring absence of mental health services provided by the May 2005 IEP.  Transcript Vol. 2 at 287-88, and 377.  A careful review of the May 2004 IEP and May 2005 IEP indicates that no mental health services or goals present in the

2004 version were removed in 2005.  Compare Defendant's Exhibit 2
with Defendant's Exhibit 4.  Instead, Dr. Koven relies on her
school's supplemental Treatment Plan developed as of August 15,
2005 to illustrate the type of mental health care that the
Student needs.  Plaintiffs' Exhibit 16 at 9-12.  However, the
2004 and 2005 IEPs both offer Student three hours of counseling a
week.  The May 2005 IEP provides Career and Life Skills goals
that address Student's emotions, his handling of others'
emotions, communication, and other behavior elements.
Defendant's Exhibit 4 at JB 27.  It is also possible that a DOE
school could similarly supplement the baseline IEP to further
address Student's mental health goals as necessary.

        Finally, the Court notes that the Current Placement
reduced its efforts to collaborate with DOE personnel in the
2004-05 year in a manner that proved detrimental to the best
interests of Student.  As Dr. Dukes testified, the Current
Placement ceased sharing monthly progress reports with the DOE.
The school changed its policy of providing these reports because
it became "cumbersome" to edit out the more private, mental
health notes contained in the reports.  Transcript Vol. 2 at
376:11-18.  Furthermore, Watson described having great difficulty
in communicating with his counterpart at the Current Placement.
Transcript Vol. 1 at 69:7-73:17.  Kevin Nabalta also prepared an
interim assessment days before the IEP meeting, but he could not

attend the meeting and did not provide the IEP team with the document.  Transcript Vol. 2 at 166:21-170:2.

Having considered the foregoing, the Court affirms the Hearing Officer's conclusion that the whole IEP team approved the PLEPS, goals, and services in the May 2005 IEP.  The Court finds that these elements are part of a satisfactory IEP that help comprise Defendant's offer of a FAPE.

**B.   Academic Setting**

In addition to Plaintiffs' criticisms of Defendant's proposed academic program, Plaintiffs also object to many elements of the proposed physical setting.  Plaintiffs contend that Student will not be able to function at a satisfactory level because the Home School campus is too large, the class size is inappropriate, air conditioning is unavailable, and he should not be immersed in regular education classes.

Defendant addressed these issues in the IEP.  Pursuant to the DOE plan, Student would spend some of his day in regular education classes along with as many as 20 other students.  He would receive all special education services in smaller class settings with approximately 5 students.  However, the DOE offered to hire an additional part-time teacher, who would be present to assist Student when he was in a regular education setting.  In doing so, Defendant would be reducing the student-teacher ratio

to 10:1 in the regular education class, with one teacher particularly focused on Student.  Transcript Vol. 1 (Testimony of Principal Hee) at 54:8-9.

The Court also notes that the program is consistent with the objective of placing students in the least restrictive environment ("LRE").  The IDEA requires that "to the maximum extent appropriate" a child with a disability should be educated in a LRE.  20 U.S.C. § 1412(a)(5); 34 C.F.R. § 300.550.  However, "the IDEA's preference for mainstreaming is not an absolute commandment."  Poolaw v. Bishop, 67 F.3d 830, 836 (9th Cir. 1995).  While efforts should be made to place a student in the LRE, the LRE must also conform to the student's IEP.  County of San Diego v. Cal. Special Educ. Hearing Office, 93 F.3d 1458, 1468 (9th Cir. 1996).  As outlined, the Home School's plan conforms with the IEP and guarantees that Student will receive the services he needs while providing the opportunity to interact with other students in a less restrictive environment.  Also, the Hearing Officer held that the IEP team sufficiently addressed the positive impact a regular education classroom setting would have on Student.  Administrative Decision at 12.

Next, Defendant's plan provides for Student to be accompanied by a teacher, aide, or fellow student as needed in order to assist him as he navigates the campus.  Transcript Vol. 1 (Testimony of Principal Hee) at 62:23-64:14.  The May 2005 IEP

27

also explicitly states that Student will be housed daily in an air conditioned setting, where background noise is reduced, and he will be seated near the instructor.  Defendant's Exhibit 4 at JB 40.  Bridges testified that she gave Mother a tour of the Home School facility and showed her Classroom C, which was air conditioned and designed to reduce noise distractions, that would be Student's classroom.  Transcript Vol. 1 at 21:11-15.  Mother contradicted this report, stating that she did not "believe there was an air-conditioner in the room."  Transcript Vol. 2 at 301:10-11.  Again, the Hearing Officer found that the DOE was credible in proving by the preponderance of evidence that it offered a FAPE to Student.  Administrative Decision at 11, 13.

Plaintiffs and their witnesses speculate that Defendant's approach to educating Student is unacceptable, both in methodology and physical setting.  Despite the parties disagreement over the final program, the Court finds that Defendant has provided an IEP in an appropriate physical setting, consistent with the IEP implemented by the Current Placement, that will address Student's needs.

## C.    Extended School Services

At his Current Placement, Student is enrolled in the

28

Biopsychosocial Rehabilitation Program ("BPSR")[2] every day after school from 2:30 p.m. until 6:00 p.m.. He attends this program to satisfy the May 2004 IEP requirement that he receive 600 minutes per week (2 hours a day) of therapeutic recreation. See Defendant's Exhibit 2, at JB 18. The May 2005 IEP retained the provision of these services, specifically stating Student "will receive an extended school day for 600 minutes per week for therapeutic recreation at a DOE school." Defendant's Exhibit 4 at JB 40. Principal Hee confirmed that the Home School had no plans to alter the level of services provided to Student. Transcript Vol. 1 at 55:23-56:12. While she does not explicitly testify that the after-school program would include therapeutic recreation, she indicates that Occupational Therapists, Speech Specialists, Physical Therapists, and assorted teachers are available to provide services. Notably, Principal Hee makes clear that many of the same critical personnel employed by the Current Placement in the after-school program would also be available at the Home School. Accordingly, the Hearing Officer concluded that the DOE intended to provide Student with the

---

[2] "The program is designed to build skills in natural and appropriate contexts so that children will be able to generalize those skills to home, school and community. . . . Occupational therapists, certified therapy assistants, speech pathologists, special education teacher and mental health staff all participate in the biopsychosocial rehabilitation on a daily basis." See Loveland Academy Web Site, Programs Page, http://www.lokahimontessori.com/programs/.

extended school year services described in the IEP.
Administrative Hearing at 11.

Plaintiffs challenge this finding and contest the DOE's claim that it is capable of providing 600 minutes a week of therapeutic recreation in an extended school format.  First, in support of their argument, Plaintiffs refer to Special Education Teacher Bridges' testimony, when she stated that the team discussed the fact that Student would participate in an after-school program, but that the specific program was not identified.  Transcript Vol 1. at 42:12-19.  Mother agreed that the IEP team discussed implementing an after-school program, but she stated that the services would be offered at Kuhio School, because Jefferson Elementary did not have such a program.  Transcript Vol. 2 at 303:14-20.  She then explained that she contacted Kuhio School to inquire about the after-school services, and was informed that no after-school services were available at that location either.  Id. at 303:21-304:3.

Finally, Plaintiffs submit an April 21, 2005 DOE memo from State Superintendent, Pat Hamamoto, that informs all principals and teachers that the DOE will no longer contract for therapeutic recreation.  Opening Brief, Exhibit 1.  This memo was circulated prior to the development of the May 2005 IEP.  The DOE's stated position is "if a student requires recreation or therapeutic recreation service to assist a student to benefit

from his or her special education, the Department can provide
that service during the school day." Id.

        Plaintiffs put forth evidence that calls into question
Defendant's ability to provide the after-school therapeutic
recreation services promised in the May 2005 IEP.  However,
Principal Hee testified that those services can be provided, and
the Hearing Officer found the promise to be credible.  The Court
concludes that as long as the DOE provides Student with the
services as promised then it will have satisfied its obligations
to provide a FAPE.  However, if Defendant fails to fulfill such a
promise, then at that time, Plaintiffs would be entitled to make
a new Request for Impartial Hearing and renew their objection.

**D.   Transition Plan**

        The IDEA only explicitly mandates that transition
services be implemented for students in a number of clearly
iterated circumstances.  "[A] coordinated set of activities" that
is "based upon the individual student's needs" is required when a
student transitions from "school to post-school activities . . .
post-secondary education, vocational training, integrated
employment . . . continuing adult education, adult services,
independent living, or community participation."  20 U.S.C. §
1401(30) (2004).  This Court has previously held that while "the
IDEA requires an IEP to have a statement of needed transition
services in some circumstances, the statutory provision of the

IDEA specifically addressing transition services does not mandate such services when a transition from private to public school takes place." <u>L.M. v. Department of Education</u>, 2006 WL 2331031, *16 (D. Haw. 2006) (<u>citing</u> <u>Bock v. Santa Cruz City Schools</u>, No. 95-20168 U.S. Dist. 1996 WL 539715 at *5 (N.D. Cal. 1996)).

The IDEA does not mandate the creation of a specific transition plan when a student moves from a private placement to a public school, but in some cases, the knowledgeable education experts agree that a particular student would benefit from such a plan.  <u>See</u>, <u>L.M.</u>, 2006 WL 2331030, *16.  Here, as in <u>L.M.</u>, the parties agree that some transition plan would be important to facilitate Student's transfer to a new school.  Transcript Vol. 1 (Testimony of Bridges) at 24:1-24:20; Transcript Vol. 2 (Testimony of Dr. Dukes) at 360:17-22.

The May 2005 IEP indicates that a "transfer plan" will be implemented for Student.  Defendant's Exhibit 4 at JB 41. Bridges explained in detail that the Home School invited Student to come visit the school at the end of the 2004-05 academic year in order to begin meeting students and staff.  Transcript Vol. 1 at 25:3-8.  The Home School also offered a personal contact person, School Counselor Maile Kakuniai, who would be available to develop a relationship with Student prior to the school year, and then assist him beyond the services provided by regular teachers.  <u>Id.</u> at 25:9-15.  Finally, the plan advised creating a

friendship group, where Student could engage socially with other students at the Home School.  Id. at 25:16-20.  The Hearing Officer relied on Defendant's provision of this "transfer plan" as additional evidence that it had met its burden of proving that the DOE could provide Student with a FAPE.  Administrative Decision at 13.

Plaintiffs' witness, Dr. Dukes, characterized the DOE's plan as inadequate.  She suggested that an adequate transition plan would include, among other things, reciprocal visits by members of the Home School and Current Placement to each others' campuses; measures to prevent Student's difficulties with spatial relations and directionality; and trouble-shooting plans that could be implemented if Student were to falter.  Transcript Vol. 2 at 361:4-362:4.

In sum, the Court recognizes Plaintiffs' numerous substantive criticisms of Defendant's proposed IEP, and reiterates that when a consensus can not be reached with regard to a student's IEP, "the [DOE] has the duty to formulate the [IEP] to the best of its ability in accordance with information developed at the prior IEP meetings."  Maher, 793 F.2d at 1490.  If disagreement persists, the parent must be afforded a due process hearing to discuss the IEP.  Id.  Mother took advantage of this opportunity and the Hearing Officer found that Defendant proved by the preponderance of the evidence that the DOE offered

33

Student a FAPE.  The Court finds that Plaintiffs have not proven
that the Hearing Officer erred in reaching his conclusions
regarding the substantive elements of the May 2005 IEP, and
upholds the Hearing Officer's decision on these grounds as well.[3]

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs'
Appeal of the Administrative Decision of the Hearing Officer.
Plaintiffs failed to prove that the Hearing Officer erred when he
concluded that Defendant established by the preponderance of the
evidence that it provided a free and appropriate public education
to Student.  The Court finds no procedural or substantive
violations of the IDEA.  Accordingly, the Court rules that
Jefferson Elementary was an appropriate placement for Student for
the 2005-06 school year.[4]  This Order is to be made effective as

---

[3] It is evident that the 2005-06 IEP can not provide an
appropriate program for Student at this time because over 16
months have passed since the plan was developed.  However, the
Court does not have jurisdiction over the development of the
2006-07 IEP.  As the DOE is undertaking a significant
responsibility in offering to educate Student, the Court
encourages it to make all possible efforts to develop a
satisfactory program that offers Student a FAPE when this Order
becomes effective.  The Court also urges Mother and the staff of
the Current Placement to collaborate with the DOE in developing
Student's newest IEP, as it is in the best interests of Student.

[4] The Court reiterates its concern regarding the lengthy
duration of the process to review Student's May 2005 IEP.  In the
sixteen months that passed since the May 2005 IEP was designed,
the entire school year for which the IEP was formulated was
completed and a new year has already commenced.  As the public
(continued...)

34

of December 31, 2006.  The Clerk of the Court is ordered to enter

judgment in favor of Defendant and close the case at that time.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 19, 2006.



Alan C. Kay
Sr. United States District Judge

_____

⁴(...continued)
school system is currently in the midst of a semester, the Court
makes this Order effective at the end of the calendar year so as
to allow Student to transition to the DOE system at the beginning
of a new semester in an attempt to minimize the disruption to
Student's education.  At the October 11, 2006 hearing, Defendant
stated that it had no objection to delaying the effective date of
this ruling.